J-S53029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RANDALL LEE ALLOWAY, JR. | |
| Appellant | No. 1982 MDA 2014 |

Appeal from the Judgment of Sentence June 24, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007927-2013

BEFORE:  DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 06, 2015**

Randall Lee Alloway, Jr., appeals from the judgment of sentence entered June 24, 2014, in the York County Court of Common Pleas.  The trial court imposed an aggregate sentence of seven to 14 years' imprisonment after Alloway was convicted, by a jury, of two counts each of aggravated assault and simple assault.[1]  On appeal, Alloway argues the evidence was insufficient to demonstrate he intended to cause serious bodily injury to the victims.  For the reasons that follow, we affirm.

The facts underlying Alloway's convictions are aptly summarized by the trial court as follows:

---

[1] 18 Pa.C.S. §§ 2702(a)(1) and 2701, respectively.

In the instant case, the jury heard that a witness, Melissa Hess, was awoken by a loud noise around 1:30 in the morning and, after hearing people yelling, this witness proceeded outside to smoke. The witness then observed three individuals heckling two men as they walked to their home, which was diagonally across the street from the witness' home. While those hurling epithets about a child molester continued their verbal barrage, one of the victims was heard to say something to the effect of "it's not me; he just lives here" before stepping off his porch to inquire what his interlocutors were going to do about it. The witness testified that it was at this point when three men proceeded to the victims' location and began throwing punches and kicking the victims when they collapsed. The jury heard that all three aggressors crossed the street together.

The witness testified that [Alloway] threw the punches that felled the victims. Once the victims dropped, the witness testified that all three of the assailants kicked the victims. After the initial onslaught, which the witness testified lasted some minutes, the assailants proceeded home before one of the assailants returned to dump refuse on the victims' bodies. It was then testified that, at this point, all three assailants resumed kicking the victims. The witness told the jury that there was a streetlight right outside her home and that she was able to see the events very clearly. The witness also stated that the victims were never aggressive.

The witness to the events told the jury that she was able to inform law enforcement which home the assailants had relocated to and their general descriptions. Moreover, as far as the codefendants on trial, the jury heard that the witness was able to positively identify them on the evening of the event.

The only victim who appeared at trial, George Williams, testified that he recalled telling the assailants he could not hear them and then he saw boots and sneakers kicking him. During trial, Mr. Williams identified both codefendants as being assailants.

Officer Glatfelter testified that upon his arrival, he found the victims partially lying atop one another and covered in large amounts of trash. Both victims appeared to be unconscious. Officer Glatfelter told the jury that there was so much blood he had to be careful not to step in any of it. Mr. Williams told Officer Kling that one of the suspects lived across the street.

Officer Kling found [one suspect] pacing the kitchen in the residence pointed out by Mr. Williams. As the suspect found in the kitchen was led away, [Alloway] and another individual appeared in the residence and were seen by Officer Ebersole through the windows. It was immediately apparent that the [Alloway] matched the description given of one of the assailants. Officer Calahan testified that the [Alloway's] knuckles on his right hand were bloody and scraped and that there was blood on [Alloway's] right pant cuff.

The doctor who treated Jack Corbin[, the other victim,] and who was aware of George Williams being in the emergency room told the jury that Mr. Corbin had a swollen face and was incontinent at the time of treatment. CT scans of Mr. Corbin revealed a possible subdural hematoma and, though this was later found not to be the case, the doctor testified that such an injury could have occurred with these injury patterns. The doctor testified that Mr. Corbin did sustain facial fractures in the frontal sinus, a complex nasal fracture, and a maxillary fracture. The jury heard that these sorts of injuries can result in numbness and loss of motor function. Moreover, Mr. Corbinss injuries cause worry about damage to the eye and the nasal injuries could result in loss of smell. The doctor also testified that there was a possibility of a closed-head injury, which could affect Mr. Corbin's memory, mood, and thought processing. The jury was informed that the bones broken in Mr. Corbin are some of the more durable ones in the face and that they would result from either the impact of a large object or *multiple blows*.

As far as Mr. Williams' injuries, the doctor informed the jury that Mr. Williams suffered a broken mandible with associated hematoma. The doctor stated that the jaw is a very strong bone. In the doctor's experience, he has seen injuries like those Mr. Williams suffered associated with significant and insignificant head injuries; but, that, ultimately, the concern is underlying brain injury. Mr. Williams also had a gash stitched in the back of his head. Mr. Williams testified that he has lasting effects of the broken jaw, because he cannot afford to have it fixed. The jury heard from Mr. Williams that his speech has been affected a little and that he experiences pain when eating hard foods.

Trial Court Opinion, 2/11/2015, at 3-6 (record citations omitted and emphasis in original).

Alloway was subsequently charged with two counts each of aggravated assault, simple assault and harassment.[2]  His case proceeded to a jury trial with co-defendant, Thomas Davis.[3]  At the close of the Commonwealth's case-in-chief, both Alloway and Davis moved for a judgment of acquittal on the charge of aggravated assault-causing serious bodily injury.  The court granted the motions with respect to victim Corbin, but denied the motions with respect to victim Williams.  *See* N.T., 5/5/2014-5/7/2014, at 233, 239.  On May 7, 2014, the jury found both co-defendants guilty of two counts of aggravated assault-attempt to cause serious bodily injury, and two counts of simple assault.  The jury, however, found Alloway and Davis not guilty of aggravated assault-causing serious bodily injury with respect to victim Williams.[4]

On June 24, 2014, Alloway was sentenced to two concurrent terms of seven to 14 years' imprisonment on the aggravated assault counts.  He did not file a timely direct appeal.  On November 10, 2014, however, Alloway

---

[2] *See* 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), and 2709(a)(1), respectively.

[3] Although charges were originally filed against a third defendant, Felipe Rodriguez, Jr., those charges were dismissed after a witness could not identify Rodriguez at the preliminary hearing.  *See* Alloway's Brief at 4.

[4] Additionally, the trial court dismissed the charges of harassment, finding that they merged into the more serious offenses.  *See* N.T., 5/5/2014-5/7/2014, at 326-327.

filed a petition seeking permission to file a notice of appeal *nunc pro tunc*. The trial court granted the petition, and this timely appeal followed.[5]

Alloway's sole issue on appeal challenges the sufficiency of the evidence supporting his conviction of aggravated assault. Our review is guided by the following:

> In reviewing a sufficiency challenge, a court determines, whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In this sufficiency challenge we are asked to determine what constitutes aggravated assault under 18 Pa.C.S. § 2702(a)(1). Thus, this is a question of law. For questions of law, our scope of review is plenary and our standard of review is *de novo*.

*Commonwealth v. Matthew*, 909 A.2d 1254, 1256-1257 (Pa. 2006) (citations omitted).

Here, Alloway was charged with aggravated assault under Section 2702(a)(1). As such, the Commonwealth was required to prove that Alloway "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Serious bodily injury is defined as "[b]odily injury which creates a substantial

---

[5] On November 26, 2014, the trial court ordered Alloway to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Alloway complied with the court's directive, and filed a concise statement on December 19, 2014. Although the court recognized the statement was filed two days late, it nevertheless treated the statement as timely filed. **See** Trial Court Opinion, 2/11/2015, at 2.

risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Where, as here, the victim did not suffer serious bodily injury,[6] the Commonwealth must prove the defendant **attempted** to cause such injury.

> "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury.
>
> "A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result...." "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.

*Matthew*, *supra*, 909 A.2d at 1257 (internal citations omitted).

In **Matthew**, the Pennsylvania Supreme Court reaffirmed the totality of the circumstances test, first utilized in **Commonwealth v. Alexander**, 383 A.2d 887 (Pa. 1978), to determine whether a defendant possessed the requisite specific intent to inflict serious bodily injury necessary to support a conviction of aggravated assault, when the victim did not, in fact, suffer serious bodily injury as a result of the assault. The **Matthew** Court explained:

---

[6] As noted above, the jury found Alloway not guilty of aggravated assault-causing serious bodily injury. **See** N.T., 5/5/2014-5/7/2014, at 321.

> ***Alexander*** provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. ***Alexander***, at 889. ***Alexander*** made clear that "simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault.

***Matthew***, ***supra***, 909 A.2d at 1257, *citing* ***Alexander***, ***supra***.

Here, Alloway contends the evidence did not establish he had the specific intent to cause serious bodily injury to the victims. Specifically, he asserts none of the ***Alexander*** factors were present: "[n]o threats were made, nor were any deadly weapons threatened or used in this assault." Alloway's Brief at 13. Rather, Alloway argues, the Commonwealth's evidence demonstrated that he punched each victim only one time, "which was followed by assorted kicks" and another assailant dumping trash on the victims. ***Id.*** at 13. Although he concedes the assault "was by no means justified and the dumping of trash upon the two men was undignified and disgraceful," Alloway contends "there was no evidence presented that [he] intended to cause serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***Id.*** at 13-14.

The trial court, however, concluded the evidence was sufficient to establish Alloway intended to cause serious bodily injury to the victims. The court opined:

The yelling and accusations regarding child molestation evidence how heated [Alloway] and the other assailants were. All of the assailants crossed the street to attack the victims and all three assailants were involved in the kicking of the victims. [Alloway], as the only perpetrator who threw punches, seems to have been the major aggressor. After the initial incident had ended, all three perpetrators returned to the victims and resumed kicking them. That the victims never responded[,] yet were continually kicked[,] evidences the level of aggression at which [Alloway] operated, which speaks to intent. Moreover, [Alloway's] bloodied and scraped knuckles, in conjunction with the blood on [Alloway's] pant leg, indicates intent to cause significant harm.

The jury heard that when the police arrived there was so much blood that care had to be taken not to step in the blood. The expert medical witness testified that there were numerous fractures of bones in Mr. Corbin's face. The expert opined that injuries of the sort Mr. Corbin sustained could lead to numbness, loss of motor function, damage to the eye, and loss of smell. Mr. Corbin's memory, mood, and thought processing could have been altered by the injuries inflicted upon him. All of these dangers occurred after the assailants broke what the expert testified were durable bones requiring a large object or *multiple blows* to damage.

As for Mr. Williams, the medical expert testified that Mr. Williams sustained a broken jaw and that the mandible is a strong bone. That Mr. Williams also had a gash to the back of his head to go with his broken jaw shows the indiscriminate frenzy of blows directed at Mr. Williams['] head. And, while the jury did not find that serious bodily injury occurred to Mr. Williams, Mr. Williams did testify that his speech had been affected and he suffers pain when eating hard foods.

We believe the circumstantial evidence presented shows that in their attempt, [Alloway] and his cohorts must have had a conscious object to engage in conduct that created a substantial risk of death or that would cause serious, permanent disfigurement, or protracted loss or impairment of function of any bodily member or organ. There can be little doubt but that when one continues to engage a downed opponent in fisticuffs and kicking and that opponent is not responding in kind then the objective is to cause serious bodily injury.

Trial Court Opinion, 2/11/2015, at 8-9 (record citations omitted and emphasis in original).

We agree with the conclusion of the trial court. While we recognize that none of the factors listed in **Matthew** are present here,[7] a review of the totality of the circumstances surrounding the unprovoked, violent attack, supports the jury's determination that Alloway had the specific intent to cause serious bodily injury to the victims. **See Commonwealth v. Dailey**, 828 A.2d 356, 360 (Pa. Super. 2003) ("It is clear … that a determination of whether an appellant acted with intent to cause serious bodily injury must be determined on a case-by-case basis" and "depending on the other circumstances, even a single punch may be sufficient.").

Here, Alloway initiated the attack after he and his cohorts called one of the victims a child molestor. **See** N.T., 5/5/2014–5/7/2014, at 82. His single blow to the victims' heads knocked each to the ground. **See id.** at 84. However, rather than retreat, Alloway and his cohorts began kicking the victims while they lay helpless on the front porch. **See id.** 85. This barrage lasted three to five minutes. **See id.** at 85. The three culprits then fled to a house across the street. However, they returned shortly thereafter to dump a bag of trash on the victims, who remained lying on the porch, and then

_____

[7] We note that although Hess described each victim as an "older gentleman," there was no testimony regarding the relative size or age of the victims as compared to the assailants. N.T., 5/5/2014–5/7/2014, at 82.

began kicking the victims again.[8]  ***See id.*** at 86.  The police, who arrived "seconds" after the assault, found the two men partially "laying on top of each other … [b]oth [] badly bleeding from the face and arms and other multiple scrapes and cuts."  ***Id.*** at 88, 162-163.  York Police Officer Clayton Glatfelter testified that when he saw Corbin, the victim was "bleeding from his face profusely" and his dentures were hanging out of his mouth.  ***Id.*** at 163.  He explained "[y]ou had to watch where you stepped to avoid stepping in blood."  ***Id.*** at 164.  Because Alloway and his cohorts left only seconds before the police arrived, it is reasonable to assume they observed the same scene as the police, and continued kicking the victims despite their beaten, bloody condition.  ***Compare Alexander***, ***supra*** (single punch to unsuspecting victim's head was insufficient to find defendant possessed requisite intent to cause serious bodily injury).

Accordingly, under the totality of the circumstances, we agree with the conclusion of the trial court that the evidence presented at trial was sufficient for the jury to find that Alloway possessed the specific intent to

_____

[8]  Based upon the injuries sustained by the victims, as well as the observations of the crime scene, it is evidence that at least some of the kicks were aimed at the victims' heads.  ***See***  N.T., 5/5/2014-5/7/2014, at 142, 144 (testimony of expert trauma surgeon that Corbin's broken facial bones were caused by either "a very large object str[iking] him over the whole area, or it was multiple blows" and Williams suffered from a broken jawbone and "associated hematoma").

cause serious bodily injury to the victims. Therefore, Alloway is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2015